UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| MODERN POINT, LLC, | Case No. 19-CV-668 (NEB/HB) |
| Plaintiff/Counter-Defendant, | |
| v. | ORDER ON MOTION FOR FINDING OF CONTEMPT |
| ACU DEVELOPMENT, LLC, | |
| Defendant/Counter-Claimant. | |

Modern Point, LLC ("Modern Point") moves for an order finding ACU Development, LLC ("ACU") and its franchisees in civil contempt for violating the Court's preliminary injunction order. (ECF No. 133.) For the reasons below, the Court denies the motion without prejudice.

## BACKGROUND

Modern Point alleges that ACU has engaged in trademark infringement and unfair competition in connection with its Modern Acupuncture clinics in Minnesota and Colorado in violation of state and federal laws. (ECF No. 1 ("Compl."), *passim*.) Modern Point filed a motion for preliminary injunction that this Court granted on October 28, 2020. (ECF No. 120 ("PI Order").) Under the PI Order, ACU and its franchisees in Minnesota and Colorado were:

    1.    Restrained from doing business under the name MODERN ACUPUNCTURE in Minnesota and Colorado;

>   2.  Ordered to remove from public view all advertising and uses in commerce within their control in the territorial boundaries of Minnesota and Colorado that refer to MODERN ACUPUNCTURE;
>   3.  Ordered to remove from public view all content on websites referring to the clinics within Minnesota and Colorado as MODERN ACUPUNCTURE clinics; and
>   4.  Restrained from using in Minnesota or Colorado commerce and advertising the mark MODERN ACUPUNCTURE or any confusingly similar designation alone or in combination with other words or designs, as a trademark, service mark, trade name component or to otherwise market, advertise, or identify acupuncture products or services not authorized by Modern Point.

(PI Order at 33.) The PI Order provides that the injunction does not prevent ACU's franchises from remining open and operating. (*Id.* at 32.) Since the Court issued the PI Order, ACU has confirmed that it permanently closed its sole Minnesota franchise for reasons unrelated to the Order. (ECF No. 145 ("Everts Decl.") ¶ 10; ECF No. 132 at 1 n.1.)

### I. ACU's Efforts to Comply with the PI Order

Within days of the PI Order, ACU stopped all external advertising for the Colorado locations, ordered new door decals and window clings with an updated logo, and instructed its Colorado franchisees to remove their window clings until replacements arrived and to answer their phones "M.A. Acupuncture." (Everts Decl. ¶¶ 4, 6.) It redesigned holiday marketing material and created a sticker to cover the old logo on existing gift cards. (*Id.* ¶¶ 6–7.) ACU engaged a signage vendor to start the process of replacing storefront signs at the Colorado locations, (*id.* ¶ 4), but ACU and its Colorado franchisees did not remove or cover up the "Modern Acupuncture" storefront signs while awaiting the replacements. (ECF No. 137 ("Kroll Decl."), Ex. 2, 3 (emails from Modern

2

Point's counsel to ACU's counsel, attaching photographs of storefront signage at Colorado locations).)

As to their online presence, ACU removed the Minnesota and Colorado locations from its Modern Acupuncture website locations map. (Everts Decl. ¶¶ 3, 10.) It is undisputed that ACU removed the now-closed Minnesota franchisee's webpage from the Modern Acupuncture website. The website continues to host ACU's Colorado franchisees' websites, so for example, the Westminster, Colorado location remains hosted at https://www.modernacupuncture.com/colorado/westminster/westminster-co010. (*Id.* ¶ 11.) ACU updated its logo and created new website templates to remove Modern Acupuncture branding from the Colorado franchisees' webpages. (*Id.* ¶ 5.) It disabled links in the header and footer of the new website template and changed the branding on the Colorado franchisees' website so that it includes the new "M.A. Acupuncture" name. (*Id.* ¶¶ 7, 9.) ACU claims that "no links at all" exist to the Colorado locations from the Modern Acupuncture website, so "no one can identify or access the Colorado franchisees from the ACU website." (*Id.* ¶ 11.) However, the Modern Acupuncture website's sitemap lists the Colorado locations with links to the Colorado franchisees' webpages. (Kroll Decl. ¶ 10, Ex. 8.)

ACU also created new Facebook cover photos and profile images of the Colorado franchisees, ceased all Facebook and Google ads for the Colorado franchisees, and removed blog post references to the now-closed Minnesota location. (Everts Decl. ¶ 5.)

But the top three results of a Google search of "modern acupuncture colorado" were the three Colorado franchisees' webpages. (Kroll Decl. ¶ 12.)

As of November 17, ACU's efforts to achieve compliance with the PI Order required over 575 hours of ACU employees' time. (Everts Decl. ¶ 12.)

## II. Parties' Correspondence and Motion for Finding of Contempt

Between October 30 and November 9, Modern Point's counsel sent several emails to ACU's counsel asking, among other things, ACU and its franchisees to remove exterior "Modern Acupuncture" signage, and to remove the Colorado franchisees' webpages from the Modern Acupuncture website. (Kroll Decl., Exs. 1–6.) On November 10, ACU's counsel telephoned Modern Point's counsel to discuss these emails. (ECF No. 146 ("Dunlop Decl.") ¶3.) Because the parties had differing interpretations of the PI Order, ACU's counsel suggested that the parties contact the Court to resolve the issue. (*Id.* ¶¶ 3–4.) When Modern Point's counsel expressed his intent to file a motion for contempt, ACU's counsel asked that she be informed beforehand so that the parties could meet and confer. (*Id.* ¶ 4.)

On November 11, ACU filed a letter requesting the Court's guidance regarding the parties' disagreement over whether ACU's alterations to its Colorado franchisees' webpages complied with the PI Order. (ECF No. 132.) The same day, Modern Point moved for a finding of contempt against ACU and its Colorado and Minnesota franchisees asserting that they failed to comply with the PI Order. (ECF No. 133.) Modern

4

Point's counsel did not contact ACU's counsel to meet and confer prior to filing the motion, despite ACU's request that he to do so. (Dunlop Decl. ¶¶ 4–6.) Modern Point later filed a supplemental meet-and-confer statement withdrawing its motion as to the Minnesota franchisee. (ECF No. 142.) Thus, the motion now focuses on ACU's and the Colorado franchisees' compliance with the PI Order.

## ANALYSIS

### I. Legal Standard

A court may punish a violation of a lawful court order under its contempt power. 18 U.S.C. § 401; Fed. R. Civ. P. 70(e). "One of the overarching goals of a court's contempt power is to ensure that litigants do not anoint themselves with the power to adjudge the validity of orders to which they are subject." *Chi. Truck Drivers v. Bhd. of Lab. Leasing*, 207 F.3d 500, 504 (8th Cir. 2000). The court's power "extends to non-parties who have notice of the court's order and the responsibility to comply with it." *Id.* at 507 (explaining that a non-party may be "guilty of contempt for violation of an order of that court, made in such suit").

The party moving for contempt sanctions bears the burden of proving by "clear and convincing evidence" that the alleged contemnor failed to comply with a "clear and specific" underlying order. *Id.* at 504; *Chaganti & Assocs., P.C. v. Nowotny*, 470 F.3d 1215, 1223 (8th Cir. 2006). The moving party does not need to show that the violation of the underlying order was willful. *United States v. Open Access Tech. Int'l, Inc.*, 527 F. Supp. 2d

910, 912 (D. Minn. 2007); *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949) ("The absence of wilfulness does not relieve from civil contempt."). Once the moving party has proven failure to comply with the underlying order, the burden shifts to the alleged party in contempt to show an inability to comply. *Chi. Truck Drivers*, 207 F.3d at 505. To demonstrate inability to comply, the party in contempt must establish that: (1) it was unable to comply, explaining why "categorically and in detail"; (2) its inability to comply was not "self-induced"; and (3) it made "in good faith all reasonable efforts to comply." *Id.* at 506 (citations and quotations omitted).

Modern Point argues that ACU and its Colorado franchisees should be held in contempt for two reasons: (1) ACU has not removed the Colorado franchisees' webpages from the www.modernacupuncture.com website; and (2) they have not removed from public view the "Modern Acupuncture" storefront signage at the Colorado locations. (ECF No. 136 at 5–8.) ACU responds that Modern Point's motion should be denied as premature because it has made and continues to make reasonable efforts to comply with the PI Order in good faith, and Modern Point failed to satisfy its meet and confer obligation before filing the motion. (ECF No. 144 at 7–11); *see* D. Minn. LR 7.1(a) (providing that a moving party "must, if possible, meet and confer with the opposing party in a good-faith effort to resolve the issues raised by the motion" before filing it).

## II.     Colorado Franchisees' Webpages

Modern Point and ACU differ in their interpretations of the Court's order that ACU "remove from public view all content on websites referring to the clinics within . . . Colorado as MODERN ACUPUNCTURE clinics." (PI Order at 33.) Modern Point argues that the PI Order requires ACU to remove the Colorado franchisees' webpages on the www.modernacupuncture.com website entirely, as it did for the now-closed Minnesota franchisee. (ECF No. 136 at 6–7.) ACU reads the order more narrowly, and so it revised the Colorado franchisees' webpages to refer to "MA Acupuncture" and removed the links to those webpages from Modern Acupuncture's "Locations" search webpage. (ECF No. 144 at 8.) ACU states that it will follow the Court's instructions on this issue, but notes that creating new websites for the Colorado franchisees would take thirty to sixty days and would be "a costly process and a devastating business hit for these small-business franchisees." (*Id.* at 9–10.) Because the Court finds ACU's interpretation of the PI Order to be reasonable, it denies the motion for a finding of contempt on this issue.

The Court further finds that ACU's interpretation of the PI Order is the correct one. The PI Order does not require ACU to remove its Colorado franchisees' webpages from the Modern Acupuncture website at this point in the litigation (after a preliminary injunction, but prior to resolution of the action). However, the Court notes that although ACU claims that "no one can identify or access the Colorado franchisees from the ACU website," (ECF No. 144 at 5), one may do so via the website's sitemap. *See* Modern

7

Acupuncture, Sitemap, https://www.modernacupuncture.com/sitemap (last accessed Dec. 22, 2020) (listing the three Colorado franchisees with links to their webpages). The Court therefore orders ACU to remove all references and links to the Colorado franchisees' locations from the sitemap webpage on the Modern Acupuncture website.

The Court is also troubled that the results of a Google search of "modern acupuncture colorado" includes the phrase "Modern Acupuncture" in the description of the Colorado franchisees' webpages. (Kroll Decl. ¶ 12 ("Colorado Springs Acupuncture – Modern Acupuncture," "MA Acupuncture Lakewood-Belmar – Modern Acupuncture," and "MA Acupuncture Westminster – Modern Acupuncture").) But it is unclear whether Google's description of these webpages is within ACU's control. Thus, the Court orders ACU to either remove the phrase "Modern Acupuncture" from the descriptions of its Colorado franchisees' webpages from this Google search result, or explain to the Court why ACU lacks the ability to do so.

### III. Storefront Signage

Modern Point also argues that, by failing to remove or cover up the exterior "Modern Acupuncture" signage at the Colorado locations, ACU and the Colorado franchisees failed to comply with the PI Order to "immediately . . . remove from public view all advertising and uses in commerce within their control in the territorial boundaries of . . . Colorado that refer to MODERN ACUPUNCTURE." (PI Order at 33.) Modern Point maintains that ACU could easily comply with the order by covering the

exterior signage with fabric or paper. (ECF No. 136 at 9.) The evidence before the Court indicates that ACU and its Colorado franchisees did not remove or cover up the "Modern Acupuncture" storefront signs while awaiting the arrival of the replacement signage. (Everts Decl. ¶¶ 3, 4; Kroll Decl., Exs. 2, 3.) As such, the Court finds that Modern Point has met its burden of proving by clear and convincing evidence that ACU and the Colorado franchisees failed to comply with the clear and specific order to remove from public view all advertising within their control in Colorado that refers to Modern Acupuncture. (PI Order at 33); *Chaganti*, 470 F.3d at 1223.

The burden now shifts to ACU and the Colorado franchisees to demonstrate: their inability to comply in detail; why their inability was not self-induced; and that they made reasonable efforts to comply. *Chi. Truck Drivers*, 207 F.3d at 506. As noted above, ACU is working to replace the exterior signage at the Colorado locations. ACU explains that it instructed the Colorado franchisees to comply with the PI Order, and believes that they will comply with the order "within a reasonable time," per the terms of their franchise agreements; if they do not, ACU has options available under those agreements to encourage compliance. (ECF No. 144 at 2, 10–11.) ACU insists that asking the Colorado franchisees to cover their exterior signage while they await the replacements is "draconian" and "crippling" because these small businesses are struggling due to the COVID-19 pandemic, and covering the exterior signage would—by all exterior appearances—shutter their businesses until the signs are replaced. (*Id*. at 11). It notes that

9

doing so would run counter to the Court's intent that the franchisees be able to remain "open and operating," while also taking prompt steps to change their signage consistent with the PI Order. (*Id.* (quoting PI Order at 32).)

The Court acknowledges the difficulties of operating small, service-oriented businesses in the midst of the COVID-19 pandemic—difficulties that are clearly not self-induced. These are unprecedented and challenging times, particularly for such businesses. The parties previously attested to the economic disruption and devastation the pandemic has wreaked on the acupuncture business, resulting in the permanent closure of some clinics.[1] (*See* ECF No. 47 ¶¶ 35–38; ECF No. 104 ¶¶ 2–4.) The Court finds that, as of the date of ACU's response brief, ACU and its Colorado franchisees had made, in good faith, all reasonable efforts to comply with the PI Order. Moreover, the Court is concerned that, despite being offered the more-efficient and less-costly option of submitting letter briefs to the Court on outstanding issues, Modern Point chose to file the motion for contempt without first meeting and conferring with ACU's counsel. (Dunlop Decl. ¶¶ 4–6.)

---

[1] In addition to the Minnesota franchisee's recent permanent closure, (Everts Decl. ¶ 10), one Colorado franchisee's website states that it is "postponing appointments at this location until further notice." M.A. Acupuncture, Westminster (Appointments Postponed), https://www.modernacupuncture.com/colorado/westminster/westminster-co010 (last accessed, Dec. 22, 2020).

For these reasons, the Court denies the motion for contempt without prejudice.[2] ACU is ordered to file monthly status updates regarding ACU and the Colorado franchisees' ongoing efforts to replace the exterior signage at the Colorado locations until they have fully complied with the PI Order.

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Modern Point, LLC's motion for finding of contempt order (ECF No. 133) is DENIED WITHOUT PREJUDICE; and

2. ACU Development, LLC is ORDERED to:

    a. Remove all references and links to its Colorado franchisees' locations from the sitemap webpage on the Modern Acupuncture website;

    b. Remove the phrase "Modern Acupuncture" from the descriptions of its Colorado franchisees' webpages in the results of a Google search for "modern acupuncture Colorado," or file a letter to the Court explaining why ACU is unable to do so; and

    c. File with the Clerk of Court monthly status updates beginning January 15, 2021, regarding ACU and its Colorado franchisees' ongoing

---

[2] Modern Point's request for attorneys' fees and costs in acting to enforce the PI Order and bringing this motion is similarly denied.

efforts to comply with the Preliminary Injunction Order (ECF No. 120). ACU will continue to provide monthly updates to the Court until ACU and the Colorado franchisees have fully complied with the PI Order, as clarified in this Order.

Dated: January 4, 2021                    BY THE COURT:

                                          s/Nancy E. Brasel
                                          Nancy E. Brasel
                                          United States District Judge