## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Modern Point, LLC,

Plaintiff,

vs.

ACU Development, LLC,

Defendant.

Case No.: 19-CV-668 (NEB/HB)

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff Modern Point, LLC ("Modern Point Acupuncture" or "MPA") respectfully requests summary judgment on three issues that will greatly streamline and focus the trial in this case. These include: (1) that MPA has been using the MODERN POINT ACUPUNCTURE mark in Minnesota and Colorado since no later than 2013 and that this pre-dates ACU's use of MODERN ACUPUNCTURE in these states; (2) that MODERN POINT ACUPUNCTURE is an arbitrary or (at the very least) suggestive name and is not merely descriptive because it does not describe acupuncture goods or services; and (3) that there is a likelihood of confusion between the near-identical marks MODERN ACUPUNCTURE and MODERN POINT ACUPUNCTURE. MPA has amassed substantial and uncontroverted evidence in support of these determinations—which includes ACU's own admissions and statements—and MPA is not aware of any genuine disputes on these issues that need to be resolved at trial. Therefore, MPA respectfully requests the Court grant summary judgment on these issues, which will further advance the goal of securing the just, speedy, and inexpensive determination of this action.

## FACTS

The Court is well-acquainted with the background facts of this case. *See Mod. Point, LLC v. ACU Dev., LLC*, No. 19-CV-668 (NEB/HB), 2020 WL 6305983, at *1 (D. Minn. Oct. 28, 2020) (ECF No. 120). MPA asserts several state and federal claims against ACU alleging that ACU's use of the name MODERN ACUPUNCTURE infringes upon and unfairly competes with MPA's name MODERN POINT ACUPUNCTURE. *See id.* For the purpose of expediency, MPA will focus the facts on the three issues on which it seeks partial summary judgment in each applicable part below.

## STANDARD FOR REVIEW

"The [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "bears the initial responsibility of informing the district court of the basis for its motion" and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nonmoving party must then respond by submitting evidentiary materials designating "specific facts showing there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)).

Summary judgment is proper if, viewing facts in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). There is a genuine dispute only if a reasonable

factfinder could find for the nonmoving party. *Id.* If a reasonable factfinder could only find

in favor of the movant, the Court "shall grant summary judgment." Fed. R. Civ. P. 56(a).

## ANALYSIS

There are no genuine disputes of material fact regarding (1) MPA's priority use,

(2) the arbitrary or suggestive and non-descriptive nature of MPA's mark, and (3) the

likelihood of confusion between the parties' names. MPA respectfully requests summary

judgment on these issues, which will simplify and streamline the future trial in this case.

**I.    There is no genuine dispute that MPA's use of MODERN POINT ACUPUNCTURE pre-dates ACU's use of MODERN ACUPUNCTURE, and therefore MPA has priority and superior rights.**

MPA first respectfully requests the Court enter summary judgment in MPA's favor

on the issue of priority of use of MODERN POINT ACUPUNCTURE because the

undisputed evidence shows that MPA has consistently used this name in both Minnesota

and Colorado since no later than 2013, pre-dating ACU's use of the similar name

MODERN ACUPUNCTURE in these states by 5+ years.

To prevail on its trademark infringement claims, MPA must "prove that it has

ownership or rights in the trademark." *Cmty. of Christ Copyright Corp. v. Devon Park*

*Restoration Branch of Jesus Christ's Church*, 634 F.3d 1005, 1009 (8th Cir. 2011)

(addressing Lanham Act and common law trademark infringement claims); *Northland Ins.*

*Cos. v. Blaylock*, 115 F. Supp. 2d 1108, 1117 (D. Minn. 2000) "[E]xclusive right to use a

mark belongs to the *first who appropriates it and uses it in connection with a particular*

*business*." *Sweetarts v. Sunline, Inc.*, 380 F.2d 923, 926 (8th Cir. 1967) (emphasis added).

A first (senior) user of a mark "is entitled to continued use of this mark free from the almost assured confusion" that results from another's use of a similar mark. *Id.* at 928.

There is no genuine dispute that MPA first appropriated and used MODERN POINT ACUPUNCTURE in connection with acupuncture goods and services no later than 2013. This is confirmed by several undisputed and unrebutted facts:

- MPA has been offering acupuncture services under the name "Modern Point Acupuncture" in Minnesota since 2012 and Colorado since 2013. (ECF No. 47 ("Long Decl.") ¶¶2, 13-14.)

- MPA has held itself out as "Modern Point Acupuncture" in marketing media, including magazines, radio, mailers, as well as correspondence and clinic location signage since 2012 (in Minnesota) and 2013 (in Colorado). (Long Decl. ¶¶18–19; ECF No. 80 ("2d Long Decl.") ¶¶4–9.)

- MPA has owned and operated www.modernpointacupuncture.com since July 2012. (Long Decl. ¶18.)

- MPA has also owned and operated several social media profiles bearing the "Modern Point Acupuncture" name, such as on Facebook, Yelp, and Twitter. (2d Long Decl. ¶8.) These profiles have significant patient engagement in the hundreds to thousands of consumers. (*Id.* ¶9.)

- MPA has always held itself out as Modern Point Acupuncture since 2012, and so have its acupuncturists and other contractors. (Third Declaration of Lindsay Long ("3d Long Decl.") ¶6; Declaration of Nicole Rieks ("Rieks Decl.") ¶4; Declaration of Naomi Richman ("Richman Decl.") ¶5;

Declaration of Sara Elizabeth Bublitz ("Bublitz Decl.") ¶¶3-4; Declaration of Jill Troutner ("Troutner Decl.") ¶5; Declaration of Amy De Point ("DePoint Decl.") 1 (¶4); Declaration of Tina Hurley ("Hurley Decl.") ¶3.)

- MPA's patient-facing documents, such as the patient intake form, refer to MPA as "Modern Point Acupuncture" on every page. (*See, e.g.*, Third Declaration of Lindsay Long ("3d Long Decl."), Ex. 1; *see also id.* at 5 ("How did you hear about Modern Point Acupuncture?").) MPA has used the same form since no later than 2015 for both its Minnesota and Colorado clinics. (*Id.* ¶11.)

- MPA has been issuing receipts/invoices using the name Modern Point Acupuncture for customers in Minnesota since 2012, and for customers in Colorado since 2013. (*See id.*, Exs. 2 (MN, 2012-2013), 3 (CO, 2013), 4 (CO, 2013).) MPA continues to issue similar receipts and invoices. (*Id.* ¶15; *e.g.*, Long Decl. ¶19 (CO, 2015).)

- Between the two states, MPA has performed services for thousands of clients under the name Modern Point Acupuncture. (Long Decl. ¶2; 2d Long Decl. ¶2 (over 20,000 appointments in the last 9 years).) Indeed, MPA regularly sends "Modern Point Acupuncture" email newsletters to its patient lists (*see, e.g.*, 3d Long Decl., Exs. 5-7; 2d Long Decl. ¶5), which when combined exceed 5,000 patients. (3d Long Decl. ¶19; 2d Long Decl. ¶7.)

- Ms. Long has been teaching and tutoring acupuncturist students in Minnesota and Colorado for many years (2015-present in Minnesota, 2013-2014 in

Massachusetts, and 2013-present in Colorado), during which she has always affiliated herself with Modern Point Acupuncture. (3d Long Decl. ¶8.) As such, her business's MODERN POINT ACUPUNCTURE mark is well-known in the acupuncture industry and in these states and elsewhere. (*Id.* ¶9.) Furthermore, ACU has previously admitted that MPA has "superior rights" to the MODERN POINT ACUPUNCTURE name:

> 46.   Defendant ACU has continued to use the confusingly similar MODERN ACUPUNCTURE Mark and MA Logo Mark after receiving this actual notice of Plaintiff Modern's superior rights and legitimate objections.

(ECF No. 1 at ¶46; ECF No. 7 at 9, ¶46.) The Court previously recognized this admission and properly held that it is evidence in the case. 2020 WL 6305983, at *4 n. 5 (citing *Sunkyong Int'l, Inc. v. Anderson Land & Livestock Co.*, 828 F.2d 1245, 1249 n.3 (8th Cir. 1987) (citations omitted) ("A pleading abandoned or superseded through amendment no longer serves any function in the case, but may be introduced into evidence as the admission of a party.")). Even evidence from ACU establishes there is no genuine dispute that MPA has priority and superior rights to its name.

ACU entered the acupuncture business in 2017 and has used the name MODERN ACUPUNCTURE name since. (ECF No. 70, ¶10.) Its three Colorado clinics opened and began operating in 2018 and 2019; the Minnesota clinic opened in February 2019. (Long Decl. ¶¶4, 5, 21, 22.) This use post-dates MPA's long-time and continuous use.

On this record, there is no genuine dispute that MPA first appropriated and used MODERN POINT ACUPUNCTURE in connection with acupuncture goods and services in Minnesota and Colorado no later than 2013, which pre-dates by 5+ years ACU's use of the similar name MODERN ACUPUNCTURE in these states beginning in 2018 and 2019 (and even elsewhere beginning in 2017). Therefore, MPA respectfully requests the Court enter summary judgment in MPA's favor on the issue of priority of use.

## II.    There is no genuine dispute that the name MODERN POINT ACUPUNCTURE is arbitrary or suggestive, not descriptive, because the name does not describe any style, kind, or form of acupuncture.

ACU alleges in its declaratory judgment counterclaim that the MODERN POINT ACUPUNCTURE mark is merely descriptive. (ECF No. 121 at 20.) There is no genuine dispute that MPA's mark MODERN POINT ACUPUNCTURE is not merely descriptive because there is no genuine dispute that the name does not describe a style, kind, or form of acupuncture goods or services. Instead, the name is arbitrary or (at the very least) suggestive[1] of subjective and abstract desirable features of those goods and services.

"A term for which trademark protection is claimed will fall in one of four categories: (1) generic, (2) descriptive, (3) suggestive, or (4) arbitrary or fanciful." *Frosty Treats Inc. v. Sony Comput. Entm't Am. Inc.*, 426 F.3d 1001, 1004 (8th Cir. 2005) (citation omitted).

---

[1] "[F]or legal purposes, there is little, if any, reason to make the distinction, and the cases hardly ever bother to do so. 'Arbitrary' and 'suggestive' marks fall within the same legal pigeon hole of classification in that neither category requires proof of secondary meaning for legal protection and registration." 2 McCarthy on Trademarks and Unfair Competition §11:12 (5th ed. 2021).

A term is descriptive if it conveys "an *immediate* idea of the ingredients, qualities or characteristics of the goods." *Id.* at 1005 (emphasis added) (citation omitted).

"[T]he commercial impression of a trade-mark is derived from it as a whole, not from its elements separated and considered in detail." *Sturgis Motorcycle Rally, Inc. v. Rushmore Photo & Gifts, Inc.*, 908 F.3d 313, 337 (8th Cir. 2018) (citation omitted). Thus, in evaluating descriptiveness, the Court "must evaluate the impression that each mark in its entirety is likely to have on a purchaser." *Id.* (citation omitted).

ACU's only specific allegation in support of its declaratory judgment counterclaim is that the "field of acupuncture is crowded with clinics that use tradenames and trademarks that include the generic words, 'modern,' 'point,' and 'acupuncture' which describe their services." (ECF No. 121 at 20.) ACU offers no further elaboration. (*See id.*) But as this Court has previously correctly held, "the commercial impression of a trade-mark is derived from it as a whole, not from its elements separated and considered in detail." 2020 WL 6305983, at *5 (quoting *Sturgis Motorcycle Rally*, 908 F.3d at 337 (citation omitted)). "A court may not review the validity of a composite-term trademark by 'dissecting' the term and reviewing the validity of its component parts individually." *Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 59 F.3d 902, 912 (9th Cir. 1995).

There is no evidence that MODERN POINT ACUPUNCTURE is merely descriptive, i.e., that it merely conveys "an *immediate* idea of the ingredients, qualities or characteristics" of the goods and services offered by MPA. *Frosty Treats*, 426 F.3d at 1005 (emphasis added) (citation omitted). Indeed, ACU has not produced a single document

showing anyone using the phrase "modern point acupuncture" or even "modern point" to describe acupuncture. When pressed, ACU admitted it had no such evidence:

> **REQUEST NO. 5**: Admit that You have no Documents that demonstrate a person making descriptive use of the phrase "modern point acupuncture."
>
> To the extent ACU understands the category of documents described in this request, it denies that it is immediately aware of any documents fitting that description, but will continue to review its documents to determine if it has such documents, and will supplement in accordance with its obligations under Federal Rule of Civil Procedure 26.

(Seventh Declaration of Kyle R. Kroll ("7th Kroll Decl.") ¶2; *see also* ECF No. 110, ¶24.)

The phrase "modern point acupuncture" does not describe a style, kind, or practice of acupuncture. (3d Long Decl. ¶23; Rieks Decl. ¶10; Richman Decl. ¶11; Bublitz Decl. ¶11; DePoint Decl. 4 (¶2).) There is no established meaning of "modern" acupuncture, "modern point" acupuncture, or even "point" acupuncture. (3d Long Decl. ¶24; Rieks Decl. ¶11; Richman Decl. ¶12; Bublitz Decl. ¶12; DePoint Decl. 4 (¶3).)

The name MODERN POINT ACUPUNCTURE also does not describe or identify any of the goods and services offered by MPA:

- Acupuncture
- Sports Medicine Acupuncture
- Women's Health Acupuncture
- Facial Acupuncture
- Moxibustion
- Infrared Heat Therapy
- Cupping
- Gua Sha
- Electroacupuncture/E-Stim
- Injection Therapy
- Tui Na

- Shiatsu Massage
- Soft Tissue Release
- Massage Therapy
- Chinese Herbs and Herbal Products
- Various Herbal Topicals
- Kinesiotape

- RockTape
- Nutritional Supplements
- Ear Beads
- Press Tacks
- Pain Relief Creams and Patches

(3d Long Decl. ¶25; Rieks Decl. ¶12; ECF No. 106 at 117-118 (verified interrogatory answer).) Not one of these goods or services is categorized as "modern point acupuncture." (3d Long Decl. ¶26; Rieks Decl. ¶13.) Neither the word "modern," nor the phrase "modern point," describe or otherwise convey any information regarding these goods or services. (3d Long Decl. ¶27; Rieks Decl. ¶12.) Put simply, "modern point acupuncture" does not convey any, let alone an "immediate," "idea of the ingredients, qualities or characteristics" of the goods and services offered by MPA. *Frosty Treats*, 426 F.3d at 1005.

Rather, MODERN POINT ACUPUNCTURE is an arbitrary or (at the very least) suggestive mark. An arbitrary mark is "a known word [or phrase] used in an unexpected or uncommon way." *Nautilus Grp., Inc. v. Icon Health & Fitness, Inc.*, 372 F.3d 1330, 1340, (Fed. Cir. 2004). One example is APPLE for computers. *See* Trademark Manual of Examining Procedure ("TMEP"), USPTO, §1209.01(a) (2018)[2]; 2 McCarthy on Trademarks and Unfair Competition §§11:11, 11:13 (5th ed. 2021) (additional examples).

---

[2] Available online at: https://tmep.uspto.gov/RDMS/TMEP/current.

10

"Suggestive marks are those that, when applied to the goods or services at issue, require imagination, thought, or perception to reach a conclusion as to the nature of those goods or services." TMEP, §1209.01(a). "If one must exercise 'mature thought or follow a multi-stage reasoning process' to determine attributes of the product or service, then the term is suggestive, not descriptive." 2 McCarthy on Trademarks and Unfair Competition §11:67 (5th ed. 2021). For example: SPEEDI BAKE for frozen dough suggests a desirable characteristic, and DRI-FOOT for a foot anti-perspirant and deodorant is not a normal or usual way of describing anti-perspirant and deodorant for feet. *See* TMEP, §1209.01(a); 2 McCarthy on Trademarks and Unfair Competition §11:72 (5th ed. 2021) (additional examples). In addition, "[i]ncongruity is a strong indication that a mark is suggestive rather than merely descriptive." TMEP, §1209.01(a). Incongruity results from combining words or phrases not commonly found together. *Id.* Thus, for example: SNO-RAKE for a snow-removal hand tool and TINT TONE for hair coloring are incongruous. *See id.* Incongruous names can also be arbitrary, such as MOUSE HOUSE for mice figurines. *See id.*

The name MODERN POINT ACUPUNCTURE combines words in an unexpected and uncommon way. Indeed, there does not appear to be any use of this phrase anywhere else in the world, based on an Internet search of the name.[3] (*See also* 3d Long Decl. ¶¶7, 29; Rieks Decl. ¶¶5, 16; Richman Decl. ¶¶6, 13; Bublitz Decl. ¶¶5, 13; Troutner Decl. ¶¶6, 10; DePoint Decl. 1 (¶5), 4 (¶4); Hurley Decl. ¶¶4-5.) Acupuncture is a traditional form of

---

[3] A Google search of this specific phrase identifies only 7 pages of results in the entire world, all identifying or referring to MPA.

medicine with Eastern roots; it is not typically referred to as "modern" or conveying a "modern point." (3d Long Decl. ¶28; Rieks Decl. ¶15.)

The sub-phrase "modern point" is also incongruous when combined with the phrase "acupuncture," as no one has combined these words in this way except MPA. The phrase "modern point acupuncture" also requires imagination, thought, and perception to reach a conclusion about the goods or services offered by MPA. It could mean many things: a fresh take on acupuncture, newer acupuncture practices, a metropolitan or cosmopolitan perspective, cutting edge techniques, novel approaches, and much more. The necessary subjective and abstract consumer creativity and perception is illustrated by what ACU intended its name MODERN ACUPUNCTURE to mean: "that the service would be up to today's standards and [meets] the consumer need for a more up to date service delivery," making "a shift in the perception of the profession to appeal to today's savvy consumer" and "bringing acupuncture into the 21st century." (7th Kroll Decl. ¶3.)

Ms. Long, for her part, chose the name MODERN POINT ACUPUNCTURE because she felt it would imply that her clinic practiced empirical scientific methodologies, while honoring training in traditional Chinese medicine and not being condescending to peers. (3d Long Decl. ¶¶2-5.) She wanted a clinic that doctors, nurses, and other medical professionals took seriously, trusted, and referred to with confidence. (*Id.* ¶3.)

The evidence demonstrates MODERN POINT ACUPUNCTURE is unique and either arbitrary or suggestive. ACU has not produced any evidence in support of its declaratory judgment counterclaim that demonstrates MODERN POINT ACUPUNCTURE is merely descriptive. MPA therefore respectfully requests the Court

enter summary judgment dismissing ACU's counterclaim and holding that MODERN

POINT ACUPUNCTURE is either arbitrary or (at the very least) suggestive.

### III. There is no genuine dispute that the mark MODERN ACUPUNCTURE is likely to cause consumer confusion as to MODERN POINT ACUPUNCTURE, as demonstrated by ACU's own statements and overwhelming evidence.

Third, MPA respectfully requests the Court find there is no genuine dispute as to

likelihood of confusion between MODERN ACUPUNCTURE and MODERN POINT

ACUPUNCTURE. To be clear, MPA is not requesting the Court find that every consumer

is actually confused—only that ACU's use of MODERN ACUPUNCTURE "is likely to

cause confusion, to cause mistake, or to deceive as to the affiliation, connection, or

association of [MPA] with [ACU], or as to the origin, sponsorship, or approval of [ACU's]

goods, services, or commercial activities by [MPA]." 15 U.S.C. §1125(a).

Here, two categories of evidence demonstrate there is no genuine dispute as to

*likelihood* of confusion: (1) ACU's own repeated admissions and statements

acknowledging a likelihood of confusion, and (2) undisputed circumstantial evidence

creating a strong inference of a likelihood of confusion.

### A. ACU has admitted and repeatedly represented to the Court, subject to Rule 11, that the two names are confusingly similar, and ACU has no evidence contradicting its statements.

First, ACU has admitted and repeatedly represented to the Court that the names

MODERN ACUPUNCTURE and MODERN POINT ACUPUNCTURE are confusingly

similar and are not only likely to cause consumer confusion, but also have actually caused

consumer confusion in Minnesota and Colorado. Under Rule 11, these statements had to

have had "evidentiary support." Fed. R. Civ. P. 11(b)(3). These repeated and unequivocal statements from ACU establish there is no genuine dispute as to likelihood of confusion.

ACU's prior admissions and statements "are admissible evidence that can be weighed like any other admission against interest." *First Bank of Marietta v. Hogge*, 161 F.3d 506, 510 (8th Cir. 1998). Subsequent denials that are "wholly inconsistent" with past "unambiguous statements" may be rejected and are insufficient grounds to avoid summary judgment. *Id.* For example, when a bank had unequivocally stated in a complaint that it was accelerating payments due under a lease-purchase agreement as of a certain date, the bank's subsequent denials that no acceleration occurred that were wholly inconsistent with those statements did not create a genuine dispute to preclude summary judgment. *See id.* The Eight Circuit agreed that "no reasonable juror could find" in favor of the bank. *Id.*

The rule established by *Hogge* is long-standing, is akin to the sham affidavit rule, *see Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1365 (8th Cir. 1983), and comports the Rule 56(e) procedure requiring that the nonmoving party respond by submitting evidentiary materials designating "specific facts showing there is a *genuine* issue for trial." *Matsushita*, 475 U.S. at 587 (1986) (emphasis added) (quoting Fed. R. Civ. P. 56(e)). It also comports with the principle established by the Supreme Court that "if the factual context renders [the nonmovant's position] implausible—if the claim is one that simply makes no . . . sense—respondents must come forward with more persuasive evidence to support their claim than would otherwise be necessary." *Id.*

14

ACU has not only admitted, but also unequivocally, unambiguously, and repeatedly represented to this Court and the U.S. District Court for the District of Colorado that the marks are confusing similar and likely to cause consumer confusion (bolding added):

<u>Answer</u>

- "ACU admits that Defendant ACU's federally registered MODERN ACUPUNCTURE Marks are **confusingly similar** to Plaintiff Modern's alleged MODERN POINT ACUPUNCTURE Mark . . . ." (ECF No. 7 at 3, ¶6.)

- "ACU admits that Defendant ACU's federally registered MODERN ACUPUNCTURE Marks are **confusingly similar** to Plaintiff Modern's alleged MODERN POINT ACUPUNCTURE Mark . . . ." (*Id.* at 6, ¶26.)

<u>Counterclaim</u>

- "Plaintiff Modern's . . . use [of] the MODERN POINT ACUPUNCTURE mark is **confusingly similar** to Defendant ACU's MODERN ACUPUNCTURE mark and brand." (*Id.* at 23, ¶6.)

- "Plaintiff Modern's continuing use of the **confusingly similar** MODERN POINT ACUPUNCTURE mark has caused, and **will continue to cause, confusion**, or mistake, or deception as to the affiliation, connection, or association of Plaintiff Modern with Defendant ACU, or as to the origin, source, sponsorship or approval of Plaintiff' Modern's services by Defendant ACU." (*Id.* at 23 ¶¶8, 50.)

- "By using the nearly identical and **confusingly similar** MODERN POINT ACUPUNCTURE mark with its identical and/or similar acupuncture and therapeutic services, without the permission of Defendant ACU, Plaintiff Modern is wrongfully trading on the significant goodwill and commercial success of Defendant ACU's MODERN ACUPUNCTURE mark and brand." (*Id.* at 23, ¶9.)

- "Plaintiff Modern's MODERN POINT ACUPUNCTURE designation, used in connection with its acupuncture and therapeutic services, is **confusingly similar** to the MODERN ACUPUNCTURE marks and brands used in connection with Defendant ACU's acupuncture and therapeutic services." (*Id.* at 30, ¶33.)

- "Plaintiff Modern's continuing use of the **confusingly similar** MODERN POINT ACUPUNCTURE mark, after being notified of the infringing nature of the use by Defendant ACU, **has caused, and will continue to cause confusion**, and/or mistake, and/or deception as to the affiliation, connection, or association of Plaintiff Modern with Defendant ACU, or as to the origin, source, sponsorship, or approval of Plaintiff Modern's services by Defendant ACU." (*Id.* at 30, ¶35.)

- "By using the nearly identical and **confusingly similar** MODERN POINT ACUPUNCTURE mark with its identical and/or similar acupuncture services and other therapeutic services, without the permission of Defendant ACU and after ACU notified Plaintiff Modern that use of the MODERN

POINT ACUPUNCTURE mark infringes Defendant ACU's MODERN ACUPUNCTURE mark, Plaintiff Modern is wrongfully trading on the significant goodwill and commercial success of Defendant ACU's MODERN ACUPUNCTURE federally registered trademarks and brand." (*Id.* at 31, ¶36.)

- "Plaintiff Modern's use of the MODERN POINT ACUPUNCTURE mark is **likely to cause confusion**, deception and mistake by creating the false and misleading impression that Plaintiff Modern's services are affiliated, connected, or associated with Defendant ACU's services, or as to the origin, source, sponsorship, or approval of Plaintiff Modern's services by Defendant ACU." (*Id.* at 32, ¶45.)

- "Plaintiff Modern's MODERN POINT ACUPUNCTURE designation is **confusingly similar** to Defendant ACU's federally registered marks and violate 15 U.S.C. §1114. Plaintiff Modern's activities **are causing and**, unless enjoined by this Court, **will continue to cause a likelihood of confusion** and deception of members of the trade and public. Additionally, these activities injure Defendant ACU's goodwill and reputation as associated with its MODERN ACUPUNCTURE marks and brands, for which Defendant ACU has no adequate remedy at law." (*Id.* at 32-33, ¶46.)

- "Plaintiff Modern has been and is passing off its services as those of Defendant ACU, **causing a likelihood of confusion** or misunderstanding as to the source, sponsorship, or approval of Plaintiff Modern's services,

**causing a likelihood of confusion** as to Plaintiff Modern's affiliation, connection, or association with Defendant ACU, and otherwise damaging the public." (*Id.* at 36, ¶60.)

- "Further, in light of the deliberate and malicious use of the **confusingly similar** MODERN POINT ACUPUNCTURE mark, and the need to deter Plaintiff Modern from engaging in similar conduct in the future, Defendant ACU additionally is entitled to punitive damages." (*Id.* at 37, ¶66.)

- Prayer for Relief: "Plaintiff Modern be ordered to cease offering for sale, marketing, promoting, and selling any and all services bearing the infringing MODERN POINT ACUPUNCTURE mark and any other **confusingly similar** mark, to any customer, including but not limited to any franchisee, acupuncturist, or marketer." (*Id.* at 39, ¶2.)

<u>Complaint in District of Colorado (transferred to District of Minnesota)</u>

- "Defendant Modern . . . [is] using the **confusingly similar** MODERN POINT ACUPUNCTURE mark." (Case. No. 19-CV-2619 (NEB/HB), ECF No. 1, ¶4.)

- "Defendant Modern's continuing use of the **confusingly similar** MODERN POINT ACUPUNCTURE mark **has caused, and will continue to cause, confusion**, or mistake, or deception as to the affiliation, connection, or association of Defendant Modern with Plaintiff ACU, or as to the origin, source, sponsorship or approval of Defendant Modern's services by Plaintiff ACU." (*Id.* ¶¶8, 45, 60.)

- "By using the nearly identical and **confusingly similar** MODERN POINT ACUPUNCTURE mark with its identical and/or similar acupuncture and therapeutic services, without the permission of Plaintiff ACU, Defendant Modern is wrongfully trading on the significant goodwill and commercial success of Plaintiff's MODERN ACUPUNCTURE mark and brand." (*Id.* ¶¶9, 46.)

- "Plaintiff ACU respectfully asks this Court to enjoin Defendant Modern from its wrongful and illegal conduct in using the **confusingly similar** MODERN POINT ACUPUNCTURE mark and brand with its identical acupuncture services and therapeutic services, and to recover damages, attorneys' fees and costs." (*Id.* ¶11.)

- "Defendant Modern's use of the MODERN POINT ACUPUNCTURE mark is **likely to cause confusion**, deception and mistake by creating the false and misleading impression that Modern's services are affiliated, connected, or associated with Plaintiff ACU's services, or as to the origin, source, sponsorship, or approval of Defendant Modern's services by Plaintiff ACU." (*Id.* ¶55.)

- "Defendant Modern's use of MODERN POINT ACUPUNCTURE is **confusingly similar** to Plaintiff ACU's federally registered marks in violation of 15 U.S.C. §1114. Modern's activities are causing and, unless enjoined by this Court, **will continue to cause a likelihood of confusion** and deception of members of the trade and public, and, additionally, injure

ACU's goodwill and reputation as associated with its MODERN ACUPUNCTURE marks and brands, for which ACU has no adequate remedy at law." (*Id.* ¶56.)

- "Further, in light of the deliberate and malicious use of the **confusingly similar** MODERN PONT ACUPUNCTURE mark, and the need to deter Defendant Modern from engaging in similar conduct in the future, Plaintiff ACU additionally is entitled to punitive damages." (*Id.* ¶72.)

- Prayer for Relief: "Defendant Modern be ordered to cease offering for sale, marketing, promoting, and selling any and all services bearing the infringing MODERN POINT ACUPUNCTURE mark or any other **confusingly similar** mark, to any customer, including but not limited to any franchisee, acupuncturist, or marketer, and also to ensure that such ceasing applies to this Court's order as it relates to injunctive relief against Defendant Modern." (*Id.* at 17, ¶2.)

Amended Complaint in District of Colorado

- "Defendant Modern . . . [is] using the c**onfusingly similar** MODERN POINT ACUPUNCTURE mark." (Case. No. 19-CV-2619 (NEB/HB), ECF No. 17, ¶7.)

- "Defendant Modern has continued to use the new **confusingly similar** MODERN POINT ACUPUNCTURE mark on its website despite Defendant Modern's actual notice of Plaintiff's federally registered MODERN

ACUPUNCTURE trademarks and exclusive rights associated therewith."
(*Id.* ¶9.)

- "Defendant Modern's [use of the] MODERN POINT ACUPUNCTURE mark in connection with its acupuncture and therapeutic services is **confusingly similar** to Plaintiff ACU's MODERN ACUPUNCTURE marks and brands used in connection with ACU's acupuncture and therapeutic services." (*Id.* ¶45.)

- "Defendant Modern has continued to use the **confusingly similar** new mark despite Defendant Modern's actual notice of Plaintiff ACU's federally registered MODERN ACUPUNCTURE marks and prior and Senior use thereof." (*Id.* ¶46.)

- "Defendant Modern's continuing use of the **confusingly similar** MODERN POINT ACUPUNCTURE mark **has caused, and will continue to cause confusion**, or mistake, or deception as to the affiliation, connection, or association of Defendant Modern with Plaintiff ACU, or as to the origin, source, sponsorship, or approval of Defendant Modern's services by Plaintiff ACU." (*Id.* ¶47.)

- "By using the nearly identical and **confusingly similar** MODERN POINT ACUPUNCTURE mark with its identical and/or similar acupuncture services and other therapeutic services, without the permission of Plaintiff ACU, Defendant Modern is wrongfully trading on the significant goodwill

and commercial success of Plaintiff's MODERN ACUPUNCTURE mark, brand and federally registered trademarks." (*Id.* ¶48.)

<u>Proposed Scheduling Order and Scheduling Order in District of Colorado</u>

- "Defendant's use of its recently revised mark, MODERN POINT ACUPUNCTURE, is **confusingly similar** to Plaintiff's senior common law and federally registered rights to MODERN ACUPUNCTURE and is **likely to cause confusion** among consumers." (Case. No. 19-CV-2619 (NEB/HB), ECF Nos. 15 at 2 <u>&</u> 18 at 2.)

<u>Opposition to Motion to Dismiss or Transfer to District of Minnesota</u>

- "Whether ACU is entitled to this relief turns on the limited factual dispute of whether Defendant's **confusingly similar** mark . . . gives Defendant priority to use that mark in Colorado . . . ." (Case. No. 19-CV-2619 (NEB/HB), ECF No. 22 at 2.)

- "Since Defendant [MPA] apparently does not dispute the **confusing similarity** of its new marks with ACU's marks, **<u>there essentially are no other facts to be decided</u>**, because the only relief requested here is a declaration of the parties' rights." (*Id.* at 2-3 (underlining also added).)

These are just *some* of the examples. Because ACU has repeatedly represented to the Court on numerous occasions that the two marks are confusingly similar, under *Hogge*, the sham affidavit rule, and Supreme Court precedent, ACU has an incredibly high burden to establish a <u>genuine</u> dispute as to *likelihood* of confusion that can only be resolved at trial.

MPA is not aware of any evidence establishing that there is no likelihood of confusion—a fact that has been admitted by both parties in this case (and the related Colorado action) since its inception. MPA is not aware of any evidence produced by ACU genuinely undercutting or explaining away its above unambiguous statements. Therefore, the Court should grant summary judgment on the issue of likelihood of confusion.

**B.    There is no genuine dispute that the circumstantial evidence—although unnecessary in this case given ACU's admissions and statements—establishes a likelihood of confusion between the two marks.**

Even if the Court turns to the circumstantial evidence factors in evaluating likelihood of confusion (it need not, given ACU's repeated admissions and statements and failure to provide evidence otherwise), there is no genuine dispute as to these either.

In evaluating circumstantial evidence of a likelihood of confusion, the Court considers six factors: (1) the strength of the trademark owner's mark; (2) the similarity between the trademark owner's mark and the alleged infringing mark; (3) the degree to which the allegedly infringing services compete with the trademark owner's services; (4) the alleged infringer's intent to confuse the public; (5) the degree of care reasonably expected of potential customers; and (6) evidence of actual confusion. *Cmty. of Christ*, 634 F.3d at 1009. However, as explained below, elements (4) and (6) are not necessary to find a likelihood of confusion, though they are additional evidence of it.

Although this is a multi-factored test, the Court may grant summary judgment even if one of the necessary factors is disputed, but does not materially affect the outcome. *See Duluth News–Tribune v. Mesabi Publ'g Co.*, 84 F.3d 1093, 1096 (8th Cir. 1996). "When . . . a trademark dispute centers on the proper interpretation to be given to the facts, rather

than on the facts themselves, summary disposition is appropriate." *Woodsmith Pub. Co. v. Meredith Corp.*, 904 F.2d 1244, 1247 (8th Cir. 1990).

Here, there is no genuine dispute as to any of the six likelihood of confusion factors, including at least three of the four necessary factors. But to the extent there is a genuine on a necessary factor, any such factual disputes "are insufficient to support the [denial] of summary judgment unless they tilt the entire balance in favor of such a finding." *Duluth News-Tribune*, 84 F.3d at 1096; *Zerorez Franchising Sys., Inc. v. Distinctive Cleaning, Inc.*, 103 F. Supp. 3d 1032, 1045 (D. Minn. 2015) (applying this rule and granting summary judgment as to likelihood of confusion).

### 1.     Strength of the Mark

There is no genuine dispute that MODERN POINT ACUPUNCTURE is strong and entitled to protection. "Generally, the strength of the mark depends on two factors—the distinctiveness of the mark and the extent to which the mark is recognized by the relevant consumer class." *J & B Wholesale Distrib., Inc. v. Redux Beverages*, LLC, 621 F. Supp. 2d 678, 684 (D. Minn. 2007) (citation omitted).

First, the mark MODERN POINT ACUPUNCTURE is either arbitrary or suggestive. *See supra* Part II. As such, the mark is inherently distinctive and entitled to protection. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992) (holding suggestive and arbitrary marks "because their intrinsic nature serves to identify a particular source of a product, are deemed inherently distinctive and are entitled to protection").

Second, there is no genuine dispute that the mark has commercial strength and is therefore sufficiently recognized by the relevant consumer class. Circumstantial evidence

that is commonly used to prove commercial strength include: (a) the amount of third party use, (b) the amount and type of advertising and promotion, (c) the amount of sales and number and type of customers, and (d) recognition by the trade, media, and potential customers. 2 McCarthy on Trademarks and Unfair Competition §11:81 (5th ed. 2021).[4]

Here, each of these considerations supports a finding of commercial strength. As an initial matter, ACU has admitted that MPA has "superior rights" to its name (ECF No. 1 at ¶46; ECF No. 7 at 9, ¶46), and it has repeatedly represented that the name MODERN POINT ACUPUNCTURE is likely to cause and actually causing confusion and resulting harm to ACU. *See supra* Part III.A. This illustrates the commercial impact and strength of the name MODERN POINT ACUPUNCTURE vis-à-vis ACU's MODERN ACUPUNCTURE. Moreover, as explained above, *supra* Part II, there is *no* third party use of the phrase "modern point acupuncture." There may be some separate and different uses

---

[4] Although expensive *direct* evidence in the form of a survey may be elicited, it is not required (nor should it be when the plaintiff is a small business with limited resources, as here). *See PlayNation Play Systems, Inc. v. Velex Corporation*, 924 F.3d 1159, 1169 (11th Cir. 2019) ("Lack of survey evidence does not weigh against the plaintiff when determining likelihood of confusion." Infringement found and affirmed.); *Yamaha Int'l Corp. v. Hoshino Gakki Co.*, 840 F.2d 1572, 1583 (Fed. Cir. 1988) ("[A]bsence of consumer surveys need not preclude a finding of acquired distinctiveness."); 6 McCarthy on Trademarks and Unfair Competition §32:195 (5th ed. 2021) ("But while survey evidence has become more common, that does not mean that it is needed, required or introduced in the majority of cases. Bird and Steckel's study of 533 trademark cases from 2000 to 2006 revealed that only 16.6% of the judicial opinions mentioned a survey. Bird and Steckel concluded that: '[W]e find no evidence that surveys are used by a majority or even a large plurality of litigants to prove likelihood of confusion in federal court.' . . . Judges who demand survey evidence and failing to see it, infer that the results would be damaging to the plaintiff, may be effectively pricing small business litigants out of the legal system, denying them the ability to enforce their marks.").

of the words "modern" or "point" in conjunction with acupuncture, but these scattered uses by no means demonstrate a crowded field. Indeed, MPA has never experienced consumer confusion with any other acupuncture clinic. (3d Long Decl. ¶34; Rieks Decl. ¶20; Hurley Decl. ¶12.) The only confusion MPA has experienced began when ACU started Modern Acupuncture and began opening clinics in Colorado in 2018 and Minnesota in 2019. (3d Long Decl. ¶¶35-36; Rieks Decl. ¶22.)

MPA has also engaged in numerous kinds of advertising and promotion in Minnesota and Colorado. (*See supra* Part I; *see also* ECF No. 106 at 128-29 (verified interrogatory answer listing marketing services used by MPA).) MPA has not only expended considerable employee time on advertising, marketing, outreach, and partnerships with other clinics, but also it spent over $22,000 on marketing expenses during 2015-2020. (3d Long Decl. ¶¶43-44.) Proportionally, the marketing expenses are approximately 24% of MPA's net profits over the same period; for its size, MPA spends a considerable amount of its available funds on advertising and marketing. (*Id.* ¶¶45-46.)

MPA has also provided over 20,000 services to consumers in Minnesota and Colorado over the past 8+ years under the name MODERN POINT ACUPUNCTURE. *See supra* Part I. MPA has been featured in newspapers and on radio. (Long Decl. ¶19.) MPA has a very positive reputation in the market and among potential referral sources. (Long Decl. ¶¶25, 33–34, 43; *see also* Rieks Decl. ¶6; Richman Decl. ¶7; Bublitz Decl. ¶6; Troutner Decl. ¶7; DePoint Decl. 2 (¶6).) MPA has received numerous positive reviews

from customers over the years. (Long Decl. ¶¶19-20.) Hundreds of these reviews are available online and illustrate MPA's impeccable and stellar record over several years.[5]

There is no genuine dispute that MPA has both a conceptually strong name, as well as a commercially strong one. This factor weighs in favor of summary judgment.

### 2. Similarity between the Marks

Similarity is based on an examination of a mark as a whole. *SquirtCo. v. Seven–Up Co.*, 628 F.2d 1086, 1091 (8th Cir. 1980). Closely-related products or services require "less similarity in the trademarks . . . to support a finding of infringement." *Id.* As the Court determined in granting the preliminary injunction: "Here, the parties do not dispute that their marks are similar." 2020 WL 6305983, at *6 (citing ECF No. 69 at 35).) Indeed, ACU has repeatedly emphasized this fact, stating they are "identical or nearly identical." *Supra* Part III.A. Thus, this factor weighs in favor of summary judgment.

### 3. Degree of Competition

Where the parties are direct competitors, the degree of competition factor weighs in favor of the trademark owner. *Sensient Techs. Corp. v. SensoryEffects Flavor Co.*, 613 F.3d 754, 766 (8th Cir. 2010). As the Court determined in granting the preliminary injunction: "neither party disputes the competitive nature of the parties' acupuncture services." 2020 WL 6305983, at *6. ACU has not disputed this element. (*See* ECF No. 69 at 35.) ACU has also repeatedly represented that "The acupuncture services and other therapeutic services

---

[5] *See, e.g.*, *Modern Point Acupuncture*, Groupon, https://www.groupon.com/deals/modern-point-acupuncture (last visited Mar. 28, 2021) (4.9 star rating across 438 reviews).

sold by Plaintiff Modern under the unauthorized MODERN POINT ACUPUNCTURE mark are similar and competitive with the services sold by Defendant ACU under the MODERN ACUPUNCTURE marks." (ECF No. 7 at 31, ¶28; *see also* Case. No. 19-CV-2619 (NEB/HB), ECF Nos. 1 at ¶48, 17 at ¶50; *supra* Part III.A (numerous similar statements regarding similar services).)

Furthermore, the Eighth Circuit has recognized that "[W]hen identical marks are used in the same geographic area for the same class of goods or services, likelihood of confusion is presumed." *Cmty. of Christ*, 634 F.3d at 1010 (citation omitted) (affirming grant of summary judgment on the issue of likelihood of confusion and infringement).

Therefore, there is no genuine dispute that the services offered by ACU are similar to and compete with Modern Point Acupuncture's services. *See id.*

### 4.    Alleged Infringer's Intent to Confuse the Public

Proof of an alleged infringer's intent to confuse the public is *not* required to prevail on a trademark infringement or unfair competition claim, but "the absence of such intent is a factor to be considered." *Sensient*, 613 F.3d at 766 (citing *Frosty Treats*, 426 F.3d at 1008). Although MPA contends ACU and its franchisees have acted knowingly, willfully, and intentionally in using a confusingly similar name—and, indeed, recent discovery shows that MPA knew about MPA's name in the marketplace no later than 2016 (7th Kroll Decl., Ex. 1)—the Court need not decide this issue to find a likelihood of confusion. *Sensient*, 613 F.3d at 766; *see also Vacation Rental Partners, LLC v. VacayStay Connect, LLC*, No. 15 CV 10656, 2017 WL 1150806, at *8 (N.D. Ill. Mar. 28, 2017) (granting summary judgment of likelihood of confusion in the absence of finding intent).

### 5.      Degree of Care Expected of Customers

In considering the degree of care expected of customers, the Court "must stand in the shoes of the ordinary purchaser, buying under the normally prevalent conditions of the market" and giving the attention such a purchaser would usually give in buying the type of goods at issue. *Sensient*, 613 F.3d at 769 (citation omitted). This factor is "more important in confusion-of-source cases where the degree of care that the purchaser exercises in purchasing a product can eliminate the confusion that might otherwise exist." *Id.* (citing *Frosty Treats*, 426 F.3d at 1010). "The more widely accessible and inexpensive the products or services, the more likely consumers are to use a lesser degree of care in discerning between marks." *Vacation Rental Partners*, 2017 WL 1150806, at *8 (citing *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 683 (7th Cir. 2001)). When a market is conducted over the Internet—as here—it is widely accessible. *Id.*

This Court previously recognized that evidence of confused consumers established that many customers do not exercise an exacting degree of care. 2020 WL 6305983, at *7. That evidence remains unrebutted, and it has continued to occur. (*See* 3d Long Decl., Exs. 8-9; *e.g.*, 2d Long Decl. Exs. C–E (records of calls from confused consumers); *see infra* Part III.B.6.) Indeed, ACU has previously represented that the similar names are causing actual confusion and harming its reputation and sales. *See supra* Part III.A.

Furthermore, many acupuncture consumers do not always exercise exacting care when attempting to find a clinic to which they have been referred, nor do they always carefully discriminate between similar names when searching online (a primary avenue for consumers to find acupuncture clinics and MPA in particular). (3d Long Decl. ¶¶30-32;

Rieks Decl. ¶¶17-19; Richman Decl. ¶¶14-16; Bublitz Decl. ¶¶14-16; Troutner Decl. ¶¶11-13; DePoint Decl. 5 (¶¶5-7); Hurley Decl. ¶¶9-11.) This is further evidenced by Google reports showing that consumers find MPA's website by sometimes searching for just "modern acupuncture," regardless of whether they are looking for either MPA or ACU. (3d Long Decl., Ex. 10.) Indeed, even sophisticated acupuncturists and marketers have confused MPA and ACU given the similar names. (*E.g.*, Blades Decl. ¶¶3-4, Ex. 1.)

Here, too, there is no genuine dispute that the degree of care exercised by consumers in the market for acupuncture services weighs in favor of summary judgment.

### 6.      Evidence of Actual Confusion

Finally, there is no genuine dispute that consumers have actually been confused by MPA and ACU's similar names. "Although evidence of actual confusion is *not necessary* for a finding that a likelihood of confusion exists, it is perhaps the most effective way to prove a likelihood of confusion." *Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc.*, 182 F.3d 598, 602 (8th Cir. 1999) (emphasis added); *David Sherman Corp. v. Heublein, Inc.*, 340 F.2d 377, 381 (8th Cir. 1965) ("[I]t is usually difficult to ferret out instances of actual confusion even though they exist.").

Even just "[o]ne instance of actual confusion has been deemed sufficient to weigh in favor of finding a likelihood of confusion." *Vacation Rental Partners*, 2017 WL 1150806, at *10 (quoting *CAE*, 267 F.3d at 685–86). "[W]hile very little proof of actual confusion would be necessary to prove the likelihood of confusion, *an almost overwhelming amount of proof would be necessary to refute such proof.*" *Int'l Kennel Club*

*of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1089 (7th Cir. 1988) (emphasis added); *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1190 (6th Cir. 1997).

Here, the record shows that there has been actual confusion by consumers, acupuncturists, and marketers of acupuncture services. (*E.g.*, Long Decl. ¶¶6, 23–26, 28, 30, 34, 43; 2d Long Decl. ¶10, Exs. C–E; Long Dep. at 37-41, 44-46; 3d Long Decl. ¶¶35-42, Exs. 8-9; Rieks Decl. ¶¶20-25, 27, Exs. 1-3; DePoint Decl. 2-4 (¶¶10-11), 5 (¶¶8-10); Richman Decl. ¶¶17-19; Bublitz Decl. ¶¶17-19; Troutner Decl. ¶¶14-16; Hurley Decl. ¶¶13-15, Exs. 1-2; ECF No. 106 at 124-25 (verified interrogatory answer describing additional instances).) MPA employees have responded to numerous instances of consumer confusion over the phone, via email, on social media, and in person, wasting over 100 hours of time. (Long Decl. ¶29; Rieks Decl. ¶26.) Other acupuncturists and referral sources have also been confused. (E.g., Long Decl. ¶¶24, 25, 34; Rieks Decl. ¶¶25, 27; Richman Decl. ¶19; Bublitz Decl. ¶19; Troutner Decl. ¶16; DePoint Decl. 5 (¶¶8, 10); Hurley Decl. ¶16.) A sophisticated marketer also thought MPA "was part of [Modern Acupuncture] because as I searched for Modern Acupuncture she came up in the search . . . . I thought she was part of the bigger franchise group." (Blades Decl., Ex. 1.)

There is no genuine dispute about actual confusion: it has indisputably occurred. Indeed, ACU has also repeatedly represented consumer confusion has occurred. *See supra* Part III.A. Therefore, this factor also warrants in favor of finding a *likelihood* of confusion.

31

**C.    ACU's unrebutted statements and the uncontroverted circumstantial evidence warrant summary judgment as to likelihood of confusion.**

The above evidence, both from ACU itself and that gathered by MPA, paints one clear picture: the near-identical marks MODERN ACUPUNCTURE and MODERN POINT ACUPUNCTURE are confusingly similar, and ACU and its franchisees' use of the former is likely to cause confusion among the relevant public as to the latter.

The evidence shows ACU acted knowingly in using its confusingly-similar name in Minnesota and Colorado, and there is significant evidence of actual consumer confusion—but these elements are unnecessary to find *likelihood* of confusion. *See Sweetarts v. Sunline, Inc.*, 380 F.2d 923, 928 (8th Cir. 1967) ("The test is not confusion but likelihood of confusion."). Here, the evidence on the necessary factors—which is not in genuine dispute—warrants summary judgment on this particular issue. *See, e.g.*, *Vacation Rental Partners*, 2017 WL 1150806, at *11 (granting summary judgment of likelihood of confusion in trademark case after considering similar evidence).

## <u>CONCLUSION</u>

MPA respectfully requests summary judgment in its favor on the issues of (1) MPA's priority use, (2) the arbitrary or suggestive and non-descriptive nature of MPA's MODERN POINT ACUPUNCTURE mark, and (3) the likelihood of confusion between the parties' names. Because there is no genuine dispute as to the material facts on these issues, summary judgment is warranted and will simplify and streamline trial.

Respectfully submitted,

Dated: March 29, 2021

**WINTHROP & WEINSTINE, P.A.**

*s/ Kyle R. Kroll*

Timothy D. Sitzmann, I.D. No.: 392464
Kyle R. Kroll, I.D. No.: 398433
225 South Sixth Street, Suite 3500
Minneapolis, Minnesota 55402
Tel: (612) 604-6400
Fax: (612) 604-6800
tsitzmann@winthrop.com
kkroll@winthrop.com

*Attorneys for Plaintiff*
*Modern Point, LLC*

21490559v5