# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

MODERN POINT, LLC,                                   Case No. 19-CV-668 (NEB/HB)

     Plaintiff/Counter-Defendant,

v.                                                                    ORDER

ACU DEVELOPMENT, LLC,

     Defendant/Counter-Claimant.

This case presents a dispute over two names for acupuncture clinics: *Modern Point Acupuncture* (owned by Plaintiff, Modern Point, LLC, a small business with a few clinics) and *Modern Acupuncture* (owned by Defendant ACU Development, LLC, a national company with franchises). Modern Point alleges that ACU violated state and federal trademark and unfair competition law in connection with ACU's Modern Acupuncture clinics in Minnesota and Colorado. Modern Point now moves for partial summary judgment and moves to exclude certain testimony by ACU's expert witnesses. For the reasons below, the Court denies the motion for summary judgment and grants the motion to exclude the expert testimony at issue.

BACKGROUND[1]

## I.     Lindsay Long: Modern Point Acupuncture

Modern Point has been offering acupuncture services under the name "Modern Point Acupuncture" in Minnesota since 2012. (ECF No. 47 ("Long Decl.") ¶¶ 2, 13–14; *see* ECF No. 172 ("3d Long Decl.") ¶¶ 6, 8.) That year, Modern Point's owner Lindsay Long changed the name of her acupuncture clinic to "Modern Point Acupuncture." (Long Decl. ¶ 13; 3d Long Decl. ¶ 2.) She chose the name "Modern Point Acupuncture" because she wanted a brand that portrayed the use of Western updated techniques combined with traditional Eastern Chinese practices: "a blend of old and new." (3d Long Decl. ¶ 2.)

*Eha Litigation.* Also in 2012, Long's business partner Frank Joshua Eha registered the name "Modern Point Acupuncture, LLC," with the Minnesota Secretary of State. (ECF No. 119 ("Long Dep.") at 12, 27.) In 2013, Eha sued Long, alleging business-related claims. (ECF No. 190-1 at 2.) Long counterclaimed, alleging Eha failed to follow their business agreement. (*Id.* at 6.) The court eventually ordered a money judgment against both Long and Eha, and each party executed a satisfaction of judgment. (*Id.* at 8–14.) Long gave up using the name Modern Point Acupuncture, LLC, and began doing business as Modern Point, LLC. (Long Dep. at 27.)

---

[1] The Court provided a detailed background in its preliminary injunction order. (ECF No. 120.) Because Modern Point seeks summary judgment on discrete issues, the Court addresses only the facts relevant to its analysis of those issues.

*Marketing and Advertising.* Modern Point has owned and operated the website www.modernpointacupuncture.com since July 2012. (Long Decl. ¶ 18.) Despite giving up the name "Modern Point Acupuncture, LLC" after the litigation with Eha, Long still used "Modern Point Acupuncture" in marketing media, including magazines, radio, mailers, and social media such as Facebook, Yelp, and Twitter, as well as clinic location signage, patient intake forms, correspondence, receipts, invoices, and newsletters. (Long Decl. ¶¶ 18–19; ECF No. 80 ("2d Long Decl.") ¶¶ 4–9; 3d Long Decl. ¶¶ 11–19; *id.*, Exs. 1–7; *see* ECF Nos. 173–78 (declaring that "Long has always held out her business as Modern Point Acupuncture").) Long, operating through Modern Point, regularly sends Modern Point Acupuncture email newsletters to its patient lists. (2d Long Decl. ¶ 7.)

In 2012, Modern Point began using a company logo that reads "modern point acupuncture & sports medicine," with "acupuncture & sports medicine" in smaller font:



(Long Dep. at 53.)

*Expansion to Colorado.* Modern Point expanded its acupuncture services from Minnesota to Colorado in 2013. That year, Long took over a clinic in Colorado called "Boulder Acupuncture Sports Medicine," which she combined with Modern Point Acupuncture. (Long Decl. ¶ 14; 2d Long Decl. ¶ 13; *see* ECF No. 70 ("St. Clair Decl.") ¶ 8 ("Boulder Acupuncture Sports Medicine/Modern Point Acupuncture").) Also in

Colorado, Modern Point offered acupuncture services in rented space in the CrossFit Sanitas gym until 2020; now it rents space in the Mandala Integrative Medicine Clinic. (2d Long Decl. ¶¶ 14–15.)

## II.     ACU: Modern Acupuncture

In contrast to Long's limited presence in Minnesota and Colorado, ACU has Modern Acupuncture clinics in around thirty states. (St. Clair Decl. ¶ 10.) ACU uses a franchising model and offers recurring memberships for acupuncture treatment. (*Id.*) ACU received its first federal registration for a "Modern Acupuncture" mark in 2017 and has several related federally registered trademarks. (*Id.*)

In 2018 and 2019, ACU franchisees opened three Modern Acupuncture clinics in Colorado. (Long Decl. ¶¶ 4, 21.) One of the Colorado clinics closed in June 2021. (ECF No. 196 ¶ 4.) In 2019, franchisees opened a Modern Acupuncture clinic in Minnesota; that clinic closed in 2020. (Long Decl. ¶¶ 5, 22; ECF No. 145 ¶ 10.) ACU thus has two active Modern Acupuncture clinics at issue, both in Colorado.

## III.    Confusion

After Modern Acupuncture began offering acupuncture services in Minnesota and Colorado, Modern Point began receiving inquiries from consumers who appeared confused about the two names. (Long Decl. ¶¶ 6, 28; 2d Long Decl. ¶ 10; *id.*, Exs. C–E; 3d Lang Decl. ¶ 35–37; *id.*, Exs. 8–9; Long Dep. at 37–41; ECF No. 173 ("Hurly Decl.") ¶¶ 13–15; *id.*, Exs. 1–2; ECF No. 174 ("Reiks Decl.") ¶¶ 21–24; *id.*, Exs. 1–3.) Other acupuncturists

also conveyed confusion on social media and asked about Long's connection to Modern Acupuncture.[2] (*E.g.*, 3d Long Decl. ¶ 41; Hurly Decl. ¶ 16; Reiks Decl. ¶¶ 2, 25; ECF No. 176 ("Bublitz Decl.") ¶¶ 2, 17–18; Richman Decl. ¶¶ 2, 17–18; DePoint Decl. ¶¶ 2, 10– 11, 8–9.) For example, acupuncturist Amy DePoint attests that when she learned that Modern Acupuncture was opening a location in Minnesota, she "thought that Lindsay Long had rebranded her business." (DePoint Decl. ¶¶ 2, 10.) DePoint herself "confused Modern Acupuncture with Modern Point Acupuncture." (*Id.* ¶ 10.) Shavonne Blades, who worked in media and advertising for thirty years, including for acupuncture services, was also confused by the similar names. (ECF Nos. 179, 179-1.)

Long attests that she and her employees have "wasted over 100 hours of time responding to instances of consumer confusion over the phone, via email, on social media, and through in-person discussions." (Long Decl. ¶ 29; *see* Long Dep. at 38, 43–44; Reiks Decl. ¶ 26.)

---

[2] Some social media posts trying to correct acupuncturists' confusion include: "You are mistaking Modern Acupuncture with Modern Point Acupuncture which Lindsay Long owns and is a different business which is definitely a confusing distinction," (Long Decl. ¶ 24); "I even had a moment where I confused the two! And certainly don't want my referrals to get confused either," (*id.* ¶ 25); "I think you might be confusing . . . Modern Point Acupuncture in Maple Grove with the new franchise Modern Acupuncture that recently opened in Minnetonka." (*Id.* ¶ 43; *see* ECF No. 177 ("Richman Decl.") ¶ 11 (referencing the same posts); ECF No. 178 ("DePoint Decl.") ¶ 11 (referencing same the posts).) Alyssa Johnson—an acupuncturist affiliated with an ACU franchise in Minnesota—acknowledged on social media that "Modern Acupuncture" was a "corporate name" that would bring Modern Point "a lot of confusion." (Long Decl. ¶¶ 33–34 (attesting that Johnson posted "I know this has been 'horrible' for [Long] both in MN and in CO.").)

### IV.     Procedural History

In March 2019, Modern Point sued ACU in this Court, alleging claims of unfair competition under the Lanham Act, 15 U.S.C. § 1125(a); trademark infringement and unfair competition under state common law; violations of the Deceptive Trade Practices Act, Minnesota Statutes § 325D.44; and declaratory judgment. (ECF No. 1 ("Compl."), ¶¶ 48–135.) A few weeks later, ACU sued Modern Point in the District of Colorado for trademark infringement, alleging the parties' marks were confusingly similar. *ACU Dev., LLC v. Modern Point, LLC*, No. 19-CV-2619 (NEB/HB), ECF No. 1 *passim* (D. Minn.). ACU's case was eventually transferred to the District of Minnesota and consolidated with this case. (*Id.*, ECF Nos. 27, 37.)

In its original Answer, ACU admitted that the MODERN POINT ACUPUNCTURE and MODERN ACUPUNCTURE marks are confusingly similar. (ECF No. 7 ("Ans.") ¶¶ 6, 26, 46.) ACU withdrew those admissions after obtaining leave to amend its Answer. (ECF No. 115.) In the Amended Answer, ACU denied that the marks are confusingly similar and denied that there is a likelihood of confusion between the marks. (ECF No. 121 ¶¶ 6, 26, 46.)

After fact discovery closed, the Court granted Modern Point's motion for a preliminary injunction, finding, among other things, that Modern Point had a fair chance of prevailing on the merits. (ECF No. 120 at 21–22.) The Court restrained ACU from doing business as Modern Acupuncture in Minnesota and Colorado, and from using the

MODERN ACUPUNCTURE mark in commerce and advertising in Minnesota and Colorado, among other restrictions. (*Id.* at 33.)

Modern Point now moves for summary judgment on three issues addressed in the preliminary injunction order: the priority of use of the MODERN POINT ACUPUNCTURE mark; the descriptive, suggestive, or arbitrary nature of the MODERN POINT ACUPUNCTURE mark; and the likelihood of confusion about the parties' marks. (*Id.* at 12–22.)

## ANALYSIS

### I.      Motion for Partial Summary Judgment

### *A.  Legal Standard*

The court will grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if a factfinder could reasonably determine the issue in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences supported by the evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."

*Anderson*, 477 U.S. at 248. The mere existence of a factual dispute will not defeat a motion for summary judgment unless that dispute is "genuine," meaning that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Modern Point, as the plaintiff, moves for summary judgment on key elements of its claims. Because Modern Point bears the burden to prove its claims, to prevail on its motion, it must show why the record is so one-sided as to rule out the possibility of ACU prevailing on those issues. *See Boerner v. Brown & Williamson Tobacco Corp.*, 260 F.3d 837, 841 (8th Cir. 2001) ("A grant of summary judgment is appropriate only where the moving party has demonstrated that there is no genuine issue of material fact such that no reasonable jury could return a verdict for the non-moving party.").

### B.  *Common Elements to Modern Point's Claims*

Modern Point alleges claims of trademark infringement and unfair competition under the Lanham Act and state law that generally require the same key elements. (ECF No. 45 at 21 n.9 (acknowledging it "has asserted several claims with similar elements").) To prove infringement, a prior user of a mark must show that "it has a valid, protectible mark" and "there is a likelihood of confusion between its mark and the defendant's mark." *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 569 F.3d 383, 389 (8th Cir. 2009); *see Sweetarts v. Sunline, Inc.*, 380 F.2d 923, 926–27 (8th Cir. 1967) (noting infringement addresses whether "the prior user of a mark is entitled to protection against a subsequent user"). Modern Point seeks summary judgment on three issues under this standard:

(1) the priority of its use of the MODERN POINT ACUPUNCTURE mark over ACU's use of the MODERN ACUPUNCTURE mark in Minnesota and Colorado; (2) whether the MODERN POINT ACUPUNCTURE mark is arbitrary or suggestive (and therefore protectible); and (3) the likelihood of confusion between the MODERN ACUPUNCTURE mark and MODERN POINT ACUPUNCTURE mark. (ECF No. 169.)

All three of these issues are questions of fact disputed by ACU. *See Networx Data Prod. Co. v. Dialight Corp.*, 867 F.2d 616, at *1 (Fed. Cir. 1989) (Table) ("The question of priority of use is one of fact."); *WSM, Inc. v. Hilton*, 724 F.2d 1320, 1326 (8th Cir. 1984) ("How a particular word has been used and how it has been understood by the public is a question of fact. . . . The correct categorization of a given term is also a factual issue.") (citations omitted); *Mut. of Omaha Ins. Co. v. Novak*, 836 F.2d 397, 398 (8th Cir. 1987) ("Likelihood of confusion is a question of fact."). So this motion does not ask the Court to decide a legal issue; instead, Modern Point asks the Court to determine three key factual issues before trial.

After careful review of the parties' briefs and supporting evidence, the Court finds that genuine issues of material fact preclude summary judgment.

1. *Priority of Use*

The exclusive right to use a trademark belongs to the first to appropriate the mark and use it in connection with a particular business. *Sweetarts*, 380 F.2d at 926 (citation omitted). Determining "whether a party's use is sufficient to establish priority requires a

case-by-case analysis." *Mastercard Int'l Inc. v. First Nat'l Bank of Omaha, Inc.*, No. 02 CIV. 3691 (DLC), 2004 WL 326708, at *6 (S.D.N.Y. Feb. 23, 2004); *see S Indus., Inc. v. Stone Age Equip., Inc.*, 12 F. Supp. 2d 796, 805 (N.D. Ill. 1998) ("In any given case, the amount of activity that constitutes 'use' depends on the facts.").

Modern Point maintains that it has consistently used the MODERN POINT ACUPUNCTURE mark in Minnesota and Colorado since at least 2013, several years before ACU began using the MODERN ACUPUNCTURE mark in those states. (ECF No. 171 at 3.) In support, Modern Point relies on declarations from Long and other acupuncturists, as well as its website, patient forms, invoices, receipts, emails, and newsletters. (*Id.* at 4–6.) Modern Point also relies on ACU's admission in its initial answer to the Complaint that ACU continued to use the MODERN ACUPUNCTURE mark "after receiving this actual notice of plaintiff Modern's superior rights and legitimate objections."[3] (Compl. ¶ 46; ECF No. 7 ¶ 46.)

ACU maintains that Long has *not* been consistent in using the name "Modern Point Acupuncture"—in support, ACU points to examples. In 2012, Long developed the Modern Point logo. At that time, Long's former business partner Eha was doing business

---

[3] ACU later amended its answer to "den[y] that Modern Point has superior rights, or any rights, to those marks, or that it has made any legitimate objections." (ECF No. 121 ¶ 46.) The Court may consider the admission in ACU's initial answer because a pleading superseded through amendment "may be introduced into evidence as the admission of a party." *Sunkyong Int'l, Inc. v. Anderson Land & Livestock Co.*, 828 F.2d 1245, 1249 (8th Cir. 1987).

as "Modern Point Acupuncture, LLC" in Minnesota. ACU contends that Long designed the logo to emphasize "Modern Point" and deemphasize "acupuncture & sports medicine" to distinguish her business from Eha's Modern Point Acupuncture, LLC. (ECF No. 189 at 17–18.) ACU also provides evidence that use of the MODERN POINT ACUPUNCTURE mark has been inconsistent in Colorado because Long sometimes answers the phone as "Boulder Acupuncture Sports Medicine" when she expects that the caller is an old patient of the prior owner of Modern Point's Colorado clinic. (Long Dep. at 105.) Finally, ACU questions the credibility of Modern Point's witnesses who declare in conclusory fashion that Modern Point "has always held itself out as Modern Point Acupuncture since 2012."[4] (ECF No. 189 at 20–21.) The Court finds that ACU has raised a dispute of material fact on priority of use, and so the Court denies summary judgment for Modern Point on this issue.

    2.   *Arbitrary, Suggestive, or Descriptive Mark*

The parties next dispute whether the MODERN POINT ACUPUNCTURE mark falls within a category of marks that is entitled to trademark protection. For purposes of trademark protection, courts divide terms into four categories, which then dictates

---

[4] Denial of summary judgment is particularly appropriate given ACU's challenge to the credibility of Modern Point's witnesses. The Court will not grant summary judgment if the nonmovant alleges specific facts that, if proven, call into doubt the credibility of the movant's witness, especially when that witness's testimony is essential to proving the movant's case. *Nationwide Prop. & Cas. Ins. Co. v. Faircloth*, 845 F.3d 378, 382 (8th Cir. 2016) (citation omitted).

whether the term is entitled to protection: (1) generic; (2) descriptive; (3) suggestive; or (4) arbitrary or fanciful. *Frosty Treats Inc. v. Sony Comput. Entm't Am. Inc.*, 426 F.3d 1001, 1004 (8th Cir. 2005) (citation omitted). A term is generic if it refers to the common name or nature of an article; such marks have no right to trademark protection. *Id.* at 1005 (citation omitted). A descriptive term conveys "an immediate idea of the ingredients, qualities or characteristics of the goods," and "is protectible only if shown to have acquired a secondary meaning." *Id.* (quotation marks and citation omitted). A suggestive term "require[s] imagination, thought, and perception to reach a conclusion as to the nature of the goods"; suggestive and arbitrary terms are "entitled to protection regardless of whether they have acquired secondary meaning." *Id*. In determining the category into which a term falls, the factfinder "must evaluate the impression that each mark in its entirety is likely to have on a purchaser" because "the commercial impression of a trade-mark is derived from it as a whole, not from its elements separated and considered in detail." *Sturgis Motorcycle Rally, Inc. v. Rushmore Photo & Gifts, Inc.*, 908 F.3d 313, 337 (8th Cir. 2018) (citation omitted).

Modern Point asks the Court to find that the MODERN POINT ACUPUNCTURE mark is arbitrary or suggestive; ACU contends the mark is merely descriptive. Modern Point claims that the name "modern point acupuncture" is arbitrary or suggestive because it combines words in an unexpected and uncommon way. (ECF No. 171 at 10–11.) It maintains that "[a]cupuncture is a traditional form of medicine with Eastern roots"

not typically known as modern or combined with "modern point," and as such, allegedly the name requires imagination and thought to reach a conclusion about the services offered by Modern Point. (*Id.* at 11–12; *see* 3d Long Decl. ¶ 2 (attesting that she chose the name Modern Point Acupuncture because it portrayed updated Western techniques fused with traditional Eastern Chinese practices).)

ACU counters that the name "modern point acupuncture" is merely descriptive, as "acupuncture" describes the intended purpose of the product, and "modern" and "point" describe the type of acupuncture provided.[5] (ECF No. 189 at 23); *see Lemme v. NBC*, 472 F. Supp. 2d 433, 443 (E.D.N.Y. 2007) (explaining that a descriptive mark "is very similar to an adjective"). ACU also offers evidence that the Colorado Secretary of State shows seventy-five businesses both "point" and "acupuncture" as part of their names; the Minnesota Secretary of State shows five such businesses. (ECF No. 70 ("St. Clair Decl.") ¶ 9.) The Court finds that ACU has raised a genuine issue of material fact as to whether the MODERN POINT ACUPUNCTURE mark is descriptive, suggestive, or arbitrary. Thus, the Court denies summary judgment for Modern Point on this issue.

   3.   *Likelihood of Confusion*

Modern Point argues that no genuine dispute exists as to whether the MODERN ACUPUNCTURE and MODERN POINT ACUPUNCTURE marks are likely to confuse

---

[5] At oral argument, ACU suggested that its MODERN ACUPUNCTURE mark is also descriptive.

customers. Likelihood of confusion turns on: (1) the strength of the trademark owner's mark; (2) the similarity between the trademark owner's mark and the alleged infringing mark; (3) how much the allegedly infringing services competes with the trademark owner's services; (4) the alleged infringer's intent to confuse the public; (5) the degree of care reasonably expected of potential customers; and (6) evidence of actual confusion. *Cmty. of Christ Copyright Corp. v. Devon Park Restoration Branch of Jesus Christ's Church*, 634 F.3d 1005, 1009 (8th Cir. 2011). No single factor controls, and "because the inquiry is inherently case-specific, different factors may be entitled to more weight in different cases." *Id.* As the evidence in this case demonstrates, likelihood of confusion is a fact-intensive inquiry. *Mid-State Aftermarket Body Parts, Inc. v. MQVP, Inc.*, 466 F.3d 630, 634 (8th Cir. 2006) (citing *SquirtCo v. Seven–Up Co.*, 628 F.2d 1086, 1091 (8th Cir. 1980)). Below, the Court sets out some of the record evidence on each of these factors; there is enough evidence on ACU's side of the scale that summary judgment is inappropriate.

*Admissions of confusion.* ACU repeatedly alleged that the MODERN ACUPUNCTURE and MODERN POINT ACUPUNCTURE marks were "confusingly similar" in its Answer to the Complaint, and in ACU's related case against Modern Point. (*E.g.*, Ans., *passim*; *ACU Dev., LLC v. Modern Point, LLC,* No. 19-CV-2619 (NEB/HB), ECF No. 1 (compl.) (D. Minn.), *passim*; *id.,* ECF No. 17 (am. compl.), *passim.*) ACU then withdrew these admissions when the Court allowed ACU to amend its Answer. Although ACU no longer alleges that the marks are confusingly similar, its prior

14

allegations are evidence of a likelihood of confusion between the two marks. Modern Point would like the prior admissions to end the Court's inquiry. But this evidence is not a slam dunk for Modern Point; instead, the Court weighs it "like any other admission against" a party's interest. *See First Bank of Marietta v. Hogge*, 161 F.3d 506, 510 (8th Cir. 1998) (holding that statements from a party's abandoned state court pleadings did not constitute "binding judicial admissions" but were admissible as an admission against the party's interest). As Judge Bowbeer explained in the order allowing ACU to amend its answer, "the issue of likelihood of confusion is of fundamental importance . . . . The public as well as the parties have a shared interest in having matters involving trademark and unfair competition resolved on the facts." (ECF No. 115 at 16.) The Court thus declines to resolve the issue of likelihood of confusion based solely on these admissions.

*Strength of the mark.* The strength of a mark generally depends on two factors: (1) its distinctiveness; and (2) "the extent to which the mark is recognized by the relevant consumer class." *J & B Wholesale Distrib., Inc. v. Redux Beverages, LLC*, 621 F. Supp. 2d 678, 684 (D. Minn. 2007) (citation omitted). The Court determines the distinctiveness of a mark based on whether it is generic, descriptive, suggestive, or arbitrary. *Frosty Treats*, 426 F.3d at 1004. As discussed above, the Court finds that a genuine issue of material fact exists as to whether the MODERN POINT ACUPUNCTURE mark is descriptive, suggestive, or arbitrary.

15

As for how well consumers recognize the MODERN POINT ACUPUNCTURE mark, Modern Point provides circumstantial evidence of recognition in the form of declarations about Modern Point Acupuncture's positive reputation, advertising, and promotion in Minnesota and Colorado. (*E.g.*, Long Decl. ¶¶ 19–20, 25, 33–34, 43; 3d Long Decl. ¶¶ 43–46.) Long attests that Modern Point has booked 20,000 services to clients in those states and has emailed newsletters to 5,000 clients. (2d Long Decl. ¶¶ 2, 7). Modern Point also cites several declarations and a webpage containing hundreds of reviews of Modern Point Acupuncture and offers testimony of a single former customer who was also a former employee. (ECF No. 171 at 26–27 & n.5; Troutner Dec. ¶¶ 1, 3–4.)

ACU counters that Modern Point presents no evidence that the relevant *consumer* class recognizes its mark, claiming that Modern Point does not provide evidence or testimony from any customers, aside from hearsay statements. (ECF No. 189 at 29); *see Brooks v. Tri-Sys., Inc.*, 425 F.3d 1109, 1111 (8th Cir. 2005) (holding that a statement in an affidavit was inadmissible because the affidavit did not "show affirmatively that the affiant is competent to testify" to the matter). ACU also argues that Modern Point presents no evidence of a Colorado consumer recognizing the MODERN POINT ACUPUNCTURE mark.[6] Although Blades attests that, as a *marketer* of acupuncture

---

[6] Five declarants attest that, in their eyes, "Modern Point Acupuncture is a distinctive brand, which is well-known in the industry throughout Minnesota *and Colorado*." (Reiks Decl. ¶ 6 (emphasis added); Troutner Decl. ¶ 7; Bublitz Decl. ¶ 6; Richman Decl. ¶ 7; DePoint Decl. ¶ 6.) But none of these declarants offer any factual support for their knowledge of the Colorado acupuncture market.

services in Colorado, the company names confused her, her declaration does not suggest that she is a consumer of acupuncture services in that market. (ECF No. 179.)

*Similarity between the marks.* The Court examines a mark as a whole to determine similarity between the marks. *SquirtCo.*, 628 F.2d at 1091. ACU argues that although the MODERN ACUPUNCTURE and MODERN POINT ACUPUNCTURE marks use similar words, they are not identical. (ECF No. 189 at 30.) As evidence of their differences, ACU cites the fact that Long decided against naming her business "Modern Acupuncture" in 2012. (*Id.; see* 3d Long Decl. ¶ 4 (rejecting "Modern Acupuncture" because she thought her peers might construe the name as "condescending" and "not properly honoring traditional Chinese medicine").) But the marks need not be identical to satisfy this factor, they need only be similar. And closely related products or services—like the acupuncture services provided by the parties—require "less similarity in the trademarks . . . to support a finding of infringement." *SquirtCo.*, 628 F.2d at 1091.

*Degree of competition.* When the parties are direct competitors, the degree-of-competition factor supports the trademark owner. *Sensient Techs. Corp. v. SensoryEffects Flavor Co.*, 613 F.3d 754, 766 (8th Cir. 2010). Both parties offer or have offered acupuncture services to clients in Minnesota and Colorado.[7] ACU argues that the parties do not

___

[7] The parties do not currently compete for clients in Minnesota because the sole Modern Acupuncture clinic in Minnesota closed in 2020. When asked about this at oral argument, Modern Point contended that Modern Acupuncture's national presence offsets the lack of actual competition in Minnesota.

compete for the same acupuncture clients because Long specializes in sports medicine acupuncture, a type of acupuncture that ACU infers that it does not offer. (ECF No. 189 at 31–32 (citing Long Decl. at 4)); Modern Point Acupuncture, *Sports Medicine Acupuncture®,* https://modernpointacupuncture.com/areas-of-expertise/sports-medicine -acupuncture (last visited Sept. 14, 2021). But sports medicine acupuncture is not the only type of acupuncture Modern Point offers. (*See* 3d Long Decl. ¶ 25 (attesting Modern Point Acupuncture offers acupuncture, sports medicine acupuncture, women's health acupuncture, and facial acupuncture, among other services).) And ACU also offers acupuncture for sports injuries. Modern Acupuncture, *Sports Injuries and Acupuncture*, https://www.modernacupuncture.com/news/2012-04-29-sports-injuries-and-acupuncture-231 (last visited Sept. 14, 2021). At oral argument, ACU likened Modern Point Acupuncture to a "specialty shop" offering several types of acupuncture; it claimed that Modern Acupuncture does not specialize because it only offers two types of acupuncture in Colorado.

*Intent to deceive the public*. A trademark owner need not prove an infringer's intent to confuse the public, but "the absence of such intent is a factor to be considered." *Sensient*, 613 F.3d at 766 (citing *Frosty Treats*, 426 F.3d at 1008). Modern Point contends that ACU acted intentionally in using a confusingly similar name, but that the Court need not resolve this issue to decide likelihood of confusion. (ECF No. 171 at 28.) In addition, ACU offers some evidence of its lack of intent to confuse the public. (*E.g.*, ECF No. 191

¶ 3; *id.*, Ex. B (ACU's marketing consulting company identifying potential social-media handles to help with naming Modern Acupuncture on social media outlets).)

*Degree of care expected of customers*. In determining the degree of care expected of customers, the Court "must stand in the shoes of" the ordinary customer, "buying under the normally prevalent conditions of the market" and giving the attention such a customer would usually give in buying the type of goods or services at issue. *Sensient*, 613 F.3d at 769 (citation omitted). Courts consider this factor to be more important in confusion-of-source cases where the amount of care that the customer exercises in purchasing a service "can eliminate the confusion that might otherwise exist." *Id*. (citing *Frosty Treats*, 426 F.3d at 1010).

To show that many customers do not exercise an exacting degree of care, Modern Point cites evidence of confused customers who called Modern Point Acupuncture believing they were contacting Modern Acupuncture. (2d Long Decl., Exs. C–E; 3d Long Decl., Exs. 8–9; Hurley Decl. Exs. 1–2.) Several declarants attest—in a conclusory manner—that many acupuncture customers do not always exercise exacting care when trying to find a clinic, nor do they always discriminate between similar names when searching online. (*E.g.*, Rieks Decl. ¶¶ 18–19; Richman Decl. ¶¶ 15–16; Bublitz Decl. ¶¶ 15–16; Troutner Decl. ¶¶ 12–13.)

ACU cites Modern Point Acupuncture's website to show that acupuncture clients choose to work with a particular acupuncturist, rather than a particular clinic, suggesting

a high degree of care. The website offers testimonials for each acupuncturist, rather than for the clinic as a whole. *E.g.*, Modern Point Acupuncture, *Testimonials – Lindsay Long, L.Ac.,* https://modernpointacupuncture.com/testimonials/testimonials-lindsay-long-l-ac (last visited Sept. 14, 2021).

*Evidence of actual confusion.* Evidence of actual confusion "is perhaps the most effective way to prove a likelihood of confusion." *Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc.*, 182 F.3d 598, 602 (8th Cir. 1999); *see Duluth News-Trib.. v. Mesabi Publ'g Co.*, 84 F.3d 1093, 1098 (8th Cir. 1996) (weighing "the number and extent of instances of actual confusion" in determining whether a likelihood of confusion exists). Modern Point argues that its evidence of actual confusion proves a likelihood of confusion. (ECF No. 171 at 30–31.) Along with declarations of acupuncturists and a marketer attesting to confusion, Modern Point offers declarations and emails describing confused customers who called Modern Point Acupuncture believing they were contacting Modern Acupuncture. (*E.g.*, 2d Long Decl., Exs. C–E; 3d Long Decl., Exs. 8–9; Hurley Decl. Exs. 1– 2.) But "testimony as to alleged confusion of third persons as provided in [a declarant's] statement . . . is one of the most unsatisfactory kinds because it is capable of such varying inferences." *Cheval Int'l v. Smartpak Equine, LLC,* No. CV 14-5010, 2016 WL 1064496, at *10 (D.S.D. Mar. 15, 2016) (citation omitted).

ACU challenges the admissibility of Modern Point's evidence of actual confusion as hearsay and lacking foundation. (ECF No. 189 at 36–37); *see Vitek Sys., Inc. v. Abbott*

*Lab'ys*, 675 F.2d 190, 193 (8th Cir. 1982) (holding that testimony by plaintiff's employees and consultants that customers told them they were confused by the similarity of the marks at issue "was hearsay in nature and the district court properly gave it little weight"); *Duluth News-Trib.*, 84 F.3d at 1098 ("[V]ague evidence of misdirected phone calls and mail is hearsay of a particularly unreliable nature given the lack of an opportunity for cross-examination of the caller or sender regarding the reason for the 'confusion.'"). But even setting aside issues of admissibility, Modern Point's evidence of actual confusion does not always assist it: some of the evidence indicates consumers mistakenly calling Modern Point Acupuncture when trying to reach *Modern Acupuncture*. Long was unaware of any customer mistakenly seeking Modern Acupuncture's services instead of Modern Point Acupuncture's and is not sure she ever lost a single client because of Modern Acupuncture. (Long Dep. at 109–11); *see Duluth News-Trib.*, 84 F.3d at 1098 (finding evidence of misdirected mail and phone calls to be "de minimis and . . . show[s] inattentiveness on the part of the caller or sender rather than actual confusion").

The evidence described above is sufficient to raise genuine issues of material fact, and so the Court denies Modern Point's motion for summary judgment on the issue of likelihood of confusion.

## II.   Motion to Exclude Expert Testimony

Under Rule 26(a)(2) of the Federal Rules of Civil Procedure, ACU served Modern Point with a disclosure in which it designated Matt Hale and Chad Everts as experts.

(ECF No. 184-1 at 8–9.) Hale is ACU's Chief Executive Officer and Everts is ACU's Treasurer. (ECF No. 184-1 at 14.) The disclosure states that Hale and Everts are expected to testify as to ACU's damages, acupuncture industry-specific information, and "[i]nformation regarding the Colorado and Minnesota acupuncture market in general and including the distinctiveness of particular business names, trademarks, marketing, and historic and current trends." (ECF No. 184-1 at 8–9.)

Modern Point moves to exclude the opinions of Hale and Everts on three topics: (1) the priority of use of the MODERN POINT ACUPUNCTURE mark; (2) the arbitrary or suggestive nature of the MODERN POINT ACUPUNCTURE mark; and (3) the likelihood of confusion between the MODERN ACUPUNCTURE and MODERN POINT ACUPUNCTURE marks. (ECF No. 183 at 1.) In response, ACU represents that it will not elicit expert opinion testimony under Rule 702 of the Federal Rules of Evidence from Hale or Everts on these three topics. (ECF No. 188 at 1–2.) Nor did ACU rely on any expert opinion in opposing Modern Point's summary judgment motion. Because ACU acknowledges that there is "no dispute for the Court to resolve" as to this motion, (*id*. at 2), the Court grants as unopposed Modern Point's motion to exclude the expert testimony on these topics.

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Modern Point, LLC's motion for partial summary judgment (ECF No. 169) is DENIED;

2. Modern Point's motion to exclude (ECF No. 181) is GRANTED;

3. ACU's Matt Hale and Chad Everts are excluded from offering expert testimony on these topics:

   a. Modern Point's priority use of the MODERN POINT ACUPUNCTURE mark, over ACU's later use of the MODERN ACUPUNCTURE mark, in Minnesota and Colorado;

   b. Whether the MODERN POINT ACUPUNCTURE mark is arbitrary, suggestive, or descriptive; and

   c. The likelihood of confusion between the marks MODERN ACUPUNCTURE and MODERN POINT ACUPUNCTURE.

Dated: September 16, 2021                    BY THE COURT:

                                             s/Nancy E. Brasel
                                             Nancy E. Brasel
                                             United States District Judge